IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
VIRGIN ENTERPRISES LTD.,      )
                              )
            Plaintiff,        )
                              )
     v.                       )   No. 13 C 8339
                              )
JAI MUNDI, INC. d/b/a         )
VIRGIN VAPOR,                 )
                              )
            Defendant.        )
```

<u>MEMORANDUM OPINION AND ORDER</u>

Virgin Enterprises, Limited ("Virgin") has sued Jai Mundi, Inc. ("JMI"), a cigarette retailer that does business as "Virgin Vapor," for trademark infringement, trademark dilution, unfair competition and related state law claims.

JMI has moved to dismiss the case for lack of personal jurisdiction or, in the alternative, to transfer the case to the Northern District of California pursuant to 28 U.S.C. § 1404(a). I deny JMI's motion for the reasons stated below.

I.

"At this early stage in the litigation, and without the benefit of an evidentiary hearing, [Virgin] bears only the burden of making a *prima facie* case for personal jurisdiction. [I] take [Virgin's] asserted facts as true and resolve any

factual disputes in its favor." *uBID, Inc. v. The GoDaddy Grp., Inc.*, 623 F.3d 421, 423-4 (7th Cir. 2010).

A.

Virgin, a British company with its principal place of business in Geneva, Switzerland, owns more than fifty (50) trademark registrations in the United States covering a broad range of products and services. *See* Compl. at ¶¶ 3, 39. Virgin licenses its trademarks to several companies that do business in Illinois, including Virgin America and Virgin Atlantic Airlines; Virgin Mobile; and Virgin Wines. *Id*. at ¶ 3.

JMI is a California corporation formed in 2011 whose principal place of business is located in Lakeport, California. *Id*. at ¶ 4. Through its website, www.virginvapor.com, JMI markets and sells electronic cigarettes, liquid nicotine, and related products under the brand names "Virgin Vapor," "Absolute Virgin," "Not-So-Virgin," and "Eco Virgin" (collectively, "Virgin Vapor products"). *Id*. at ¶ 5.

The Virgin Vapor website includes an online store where customers can make direct purchases and submit wholesale orders. The website also includes a "Store Locator" page that lists five locations in Illinois: (1) Roots Smoke & Vapor Shop in Chicago; (2) Smoke and Vape in Chicago; (3) Steam Engine Vaping Co. in Decatur; (4) The Co-Op Shop in East Peoria; and (5) Vape Soul in

2

Arlington Heights.  *See* Dkt. No. 47 ("Pl.'s Opp'n") at Ex. C.[1]
Until recently, Virgin Vapor's website also listed a "store" called AMGlobal located in Herrin, Illinois.

In addition to marketing Virgin Vapor products through its website, JMI maintains a Facebook page, a Twitter account, and an online forum where company representatives communicate with customers from around the world.  *See* Pl.'s Opp'n at Exs. E to H.  JMI also runs an "affiliate program" in which third parties agree to place a Virgin Vapor banner on their websites in exchange for a recurring 12.5 percent commission on orders placed by customers who click on the banner.

Virgin Vapor also participated in a trade show called the "Vapor World Expo" held in Rosemont, Illinois on May 7-8, 2014. *Id*. at Ex. I.

B.

On September 27, 2012, Virgin demanded in writing that JMI phase out use of the "Virgin Vapor" name.  The parties then engaged in settlement discussions for thirteen months.

On November 14, 2013, one day before the deadline for submitting a counter-proposal, JMI filed suit against Virgin in the Central District of California seeking a declaration that it

---

[1] Since this lawsuit was filed, Virgin Vapor has added a sixth Illinois location to online store directory: Upper Limits in Springfield.  *See* www.virginvapor.com/apps/store-locator (last visited July 17, 2014).

was not infringing any of Virgin's trademarks. *See Jai Mundi, LLC v. Virgin Enterprises Ltd.*, No. 13 C 8429-R (C.D. Cal.) ("the California action"). Virgin filed this trademark infringement action on November 19, 2013, five days after JMI filed the California action.

On January 16, 2014, the judge presiding over the California action, the Honorable Manuel Real, granted Virgin's motion to transfer that case to the Northern District of Illinois on the ground that JMI had engaged in forum shopping by filing an anticipatory declaratory judgment suit during settlement negotiations. *See id.* at Dkt. No. 32. In connection with this ruling, Judge Real noted that venue and personal jurisdiction were proper in the Northern District of Illinois because Defendant sells and promotes its products in this forum. JMI voluntarily dismissed its declaratory judgment action after it was transferred to this district because the present suit encompasses the same issues. *See Jai Mundi LLC* v. *Virgin Enterprises Ltd.*, 14 C 383 (N.D. Ill.) at Dkt. No. 40.

On January 6, 2014, while the California action was still pending, JMI moved to dismiss this suit for lack of personal jurisdiction or, alternatively, to transfer this case to the Central District of California. *See* Dkt. No. 16. In support of this motion, JMI submitted a declaration from its President, Shawnee Jones ("Ms. Jones"), stating that since the company's

4

formation in 2011, it had sold Virgin Vapor products to only one customer in Illinois. *See* Dkt. No. 17-1 at ¶ 5. That customer, Tom Pellegrino ("Mr. Pellegrino"), owns the AMGlobal "store" previously listed on Virgin Vapor's website. Ms. Jones declared that Mr. Pellegrino purchased about $1,700 worth of Virgin Vapor products between March 2013 and October 2013. *Id*. Mr. Pellegrino submitted an attorney-drafted declaration attesting to the same. *See* Dkt. No. 17-2 at ¶ 4. However, the invoices attached to Mr. Pellegrino's declaration plainly show that he purchased over $5,000 worth of Virgin Vapor products.

Two days after JMI moved to dismiss this case, Virgin filed a motion seeking leave to conduct discovery on the issue of personal jurisdiction. *See* Dkt. No. 19. I granted Virgin's motion over JMI's opposition (Dkt. No. 29) and subsequently denied JMI's belated request to extend discovery (Dkt. No. 51).

C.

Ms. Jones, testifying as JMI's corporate representative under Fed. R. Civ. P. 30(b)(6), admitted that the company did not have a workable accounting system in place to track sales as late as November 2013. To the extent JMI tracked retail sales, it did so through Shopify, which hosts Virgin Vapor's online store. JMI did not consistently track its wholesale orders; its distributions of free samples; or its commission payments to members of the affiliate marketing program.

5

Despite its questionable record-keeping practices, JMI has compiled a spreadsheet purporting to list its sales to retail and wholesale customers in Illinois. JMI now estimates that it has shipped 2,318 orders to retail customers in Illinois totaling $94,983.20 in value. JMI also identifies four wholesalers in Illinois who have allegedly purchased $15,848.27 worth of Virgin Vapor products. In sum, JMI asserts that the total value of its sales to Illinois customers since 2011 is $110,831.47, or approximately two percent of its sales.

This estimated sales total represents an abrupt departure from JMI's earlier contentions that Mr. Pellegrino was its only customer in Illinois and that he purchased only $1,700 worth of Virgin Vapor products. Ms. Jones asserts that using the search term "IL" as well as "Illinois" explains the sixty-five fold increase in JMI's estimated sales to Illinois customers. *See* Dkt. No. 36-1 at ¶ 16. When asked whether JMI's spreadsheet reflected all sales to Illinois customers as of the date it was produced, Ms. Jones testified:

> I would hope so, but after our previous mistake and knowing the difficulties we have with our accounting system, I, you know, I feel a little bit shaken by what happened before so I would hesitate to say with full confidence. But I do know that we, as exhaustively as we could, tried to find everything.

Jones Dep. at 41:9-14.

Virgin has identified various respects in which JMI's spreadsheet of Illinois sales is still under-inclusive: (1) JMI's reported sales to Mr. Pellgrino omit orders he placed in July 26 and August 9, 2013; (2) JMI's reported sales to Vapor Escape, a wholesale customer, omit at least three orders totaling $4,453.83; (3) JMI's reported sales to wholesale customers do not include any of the five Illinois stores listed on its website or the Liquid Smoke Village Vape Shoppe in Antioch, Illinois, whose Facebook page advertises Virgin Vapor products for sale; and (5) JMI's reported sales to retail customers do not include an order placed by Lily Hadley, a former paralegal at the law firm representing Virgin in this litigation, in November 2011.

## II.

JMI has moved to dismiss this suit on the ground that its contacts with Illinois are insufficient to support the exercise of general or specific personal jurisdiction over the company in this judicial district.

Virgin's argument that JMI is subject to general or "all purpose" jurisdiction in Illinois is not even colorable, so I consider only whether specific or "conduct-linked" jurisdiction exists in this case. *See Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014) (noting that foreign corporation is subject to general jurisdiction only when its contacts with forum state are

"so constant and pervasive as to render it essentially at home in the forum State" (internal quotations and citation omitted)).

Virgin has asserted claims under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), 1125(c), and Illinois law. "The Lanham Act does not authorize nationwide service of process, so a federal court sitting in Illinois may exercise jurisdiction over [JMI] in this case only if authorized both by Illinois law and by the United States Constitution." *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (internal citation omitted) (citing Fed. R. Civ. P. 4(k)(1)). "[T]he Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause, 735 ILCS § 5/2-209(c), so here the state statutory and federal constitutional inquiries merge." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). My analysis is therefore limited "to whether exercising jurisdiction over [JMI] comports with the federal guarantee of due process." *Ill. v. Hemi Grp.*, 622 F.3d 754, 757 (7th Cir. 2010).

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz*,

8

471 U.S. 462, 472 (1985)). "The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment's Due Process Clause." *Id*.

A.

The first prong of the jurisdictional due process analysis "boils down" to whether JMI "has purposely exploited the Illinois market." *be2*, 642 F.3d at 558. Accepting Virgin's allegations as true and resolving all factual disputes in its favor, the answer is a resounding yes.

The Seventh Circuit's decision in *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010), compels the conclusion that JMI purposely availed itself of the privilege of conducting business in Illinois. Hemi was a company based in New Mexico that sold discount cigarettes over the internet. *Id*. at 755. The only forum contacts alleged in the State of Illinois' complaint were Hemi's sale of three hundred packs of cigarettes to an agent from the Illinois Department of Revenue in 2005 and 2007. *Id*. at 755. Hemi's websites advertised its products to customers in every state except New York. *Id*. at 755-56. However, "Hemi [did] not specifically single out Illinois residents on any of its websites." *Id*. at 756. It was undisputed that Hemi "[was] not registered to do business in Illinois, [did] not have any offices or employees in Illinois,

9

[did] not bank in Illinois, and [had] not advertised in print media in Illinois." *Id*.

On interlocutory appeal, the Seventh Circuit affirmed the district court's assertion of specific personal jurisdiction over Hemi based on the forum contacts cited above:

> Hemi created several commercial, interactive websites through which customers could purchase cigarettes from Hemi. Hemi held itself out as open to do business with every state (including Illinois) except New York. After the customers made their purchases online, Hemi shipped the cigarettes to their various destinations. It is Hemi reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts with Illinois that justify exercising personal jurisdiction over Hemi in Illinois.

*Id*. at 758.

JMI, like Hemi, maintains an online store where customers can purchase cigarettes and related products. JMI's shipment of at least 2,300 orders to Illinois customers since 2011 is a larger volume of sales than in *Hemi*. The listing of five or six Illinois stores on Virgin Vapor's website provides an even stronger basis for asserting specific personal jurisdiction over JMI. *See id.* (noting that a hypothetical listing of all forty-nine states except New York on Hemi's websites "would have made a stronger case for jurisdiction...inasmuch as it would have expressly stated that Hemi wanted to do business with Illinois residents.").

In addition to expressly targeting Illinois customers through its online store directory, JMI has used marketing tools such Facebook, Twitter, and online forums to reach customers from around the world, including Illinois. JMI also attended a trade show in Rosemont, Illinois in May 2014. Thus, JMI has gone above and beyond the forum contacts that *Hemi* deemed sufficient to support the exercise of personal jurisdiction.

*Hemi* also shows that the precise dollar value of JMI's sales to Illinois customers--either as an absolute number or as a percentage of the company's total sales--is not dispositive for purposes of determining whether specific personal jurisdiction exists. *Cf. Daimler AG*, 134 S.Ct. at 762 n.20 ("General jurisdiction...calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide."). The purchase of three hundred packs of cigarettes by an Illinois Department of Revenue agent was sufficient to support specific personal jurisdiction in *Hemi*, so JMI's sale of at least $110,000 worth of Virgin Vapor products to Illinois customers surely constitutes a sufficient body of contacts with this forum for purposes of establishing personal jurisdiction.

JMI has not cited or attempted to distinguish *Hemi* despite its striking factual similarities to this case. Instead, JMI attempts to invert the personal jurisdiction analysis by focusing on Virgin's contacts with Illinois. JMI argues that

its allegedly infringing activities harm Virgin, if at all, only in the United Kingdom (its place of incorporation) or Switzerland (its principal place of business). As JMI would have it, Virgin cannot sue for trademark infringement in this Court unless Virgin itself, as opposed to its licensees, has certain minimum contacts with the forum.

JMI's argument is based on a misunderstanding of the relevant doctrine. "The plaintiff's lack of 'contacts' [with the forum state] will not defeat otherwise proper jurisdiction, but they may be so manifold as to permit jurisdiction when it would not exist in their absence." *Calder v. Jones*, 465 U.S. 783, 788 (1984). When a plaintiff's contacts with the chosen forum are manifold, "constitutionally sufficient contacts can be imputed to a defendant if the defendant is accused of committing an intentional tort by actions that are 'expressly aimed' at the forum state." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 445 (7th Cir. 2010). I need not delve into the intricacies of *Calder*'s "express aiming" test for intentional torts because JMI's actual (as opposed to imputed) contacts with Illinois are sufficient to support the exercise of specific personal jurisdiction. *See uBID*, 623 F.3d at 427 n.1 (declining to apply *Calder*'s express aiming test where Arizona corporation's "actual" contacts in Illinois were constitutionally sufficient

to make it answerable in this district for alleged Lanham Act violations).

In sum, JMI's targeting of Illinois customers through its website, its marketing activities, and its participation in a local trade show constitute purposeful availment of the Illinois market such that the company should reasonably anticipate being haled into court here to answer for its forum-related contacts.

B.

It is undisputed that Virgin's claims arise out of JMI's contacts with this forum. Indeed, JMI's forum contacts and its allegedly infringing activities are one and the same: JMI's marketing, sale, and distribution of Virgin Vapor Products to Illinois consumers.[2]

C.

After finding that Virgin's claims arise out of JMI's purposeful availment of the Illinois market, "[I] must still satisfy [myself] that the exercise of specific jurisdiction over [JMI] in Illinois would not offend traditional notions of 'fair

---

[2] *Cf. Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (finding no connection between (1) California corporation's posting of allegedly infringing message on its website in 2012 and distribution of the same to an e-mail list that included Indiana residents and (2) the company's subsequent forum-related contacts--namely, fulfilling "a few orders [to Indiana customers] after putting the allegedly infringing message on its website and in e-mails").

play and substantial justice.'" *uBID*, 623 F.3d at 432 (quoting *Int'l Shoe*, 326 U.S. at 320).

The relevant considerations in this "final look at fairness" include "the burden on [JMI], the forum state's interest in adjudicating the dispute, [Virgin's] interest in obtaining convenient and effective relief, the interstate judicial system's interest in efficiently resolving controversies, and the shared interest of the states in furthering fundamental substantive social policies." *Id*. "These factors rarely will justify a determination against personal jurisdiction." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781 n.10 (7th Cir. 2003).

The only reasonableness factor that arguably points in JMI's direction is the burden of defending a lawsuit in Illinois. Although JMI is a California corporation, it has not explained in concrete terms why litigating in the Northern District of Illinois would be unduly burdensome. JMI has already retained local counsel and engaged in motion practice in this Court. I find no unfairness in requiring the company to defend a lawsuit in this Court given that it had sufficient resources to purposefully avail itself of the Illinois market. *See Hemi Group*, 622 F.3d at 760

III.

As a fallback position, JMI initially argued that I should transfer this to the Central District of California. JMI now seeks a transfer to the Northern District of California, but has not explained this abrupt change in position.

The federal change of venue statute, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" "[U]nless the balance [of relevant factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

"With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). "Other related factors include the location of material events and the relative ease of access to sources of proof." *Id*. Under the "interest of justice" prong, "courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving

controversies in each locale, and the relationship of each community to the controversy" *Id*.

Taking these factors into account, I am not persuaded that the Northern District of California is a more convenient venue than the Northern District of Illinois for this litigation. JMI is a California corporation, but it does not follow that most of the materials events in this trademark infringement action took place in that state. JMI concedes that "the actual injury in a trademark infringement case may be deemed to occur where the plaintiff is located or where the consumer is misled." Dkt. No. 36 at 17. Thus, material events took place in Illinois. I give little weight to JMI's fallback argument that California is a more appropriate venue than Illinois based on JMI's higher volume of allegedly infringing sales in the former venue. As Virgin has demonstrated, JMI's sales figures are not reliable.

JMI's argument that California is a more convenient venue than Illinois for the parties and witnesses is also unpersuasive. The convenience of the parties does not tip the scales in either direction. "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation*, 626 F.3d at 978.

The relative convenience of the two possible venues for witnesses is also a draw. JMI states that almost all of its

employees, its graphic designer, and third party witnesses who helped select the Virgin Vapor name are all located in California.  In contrast, Virgin argues that several of the licensees who have been harmed by JMI's allegedly infringing activities and consumers who have been misled are located in Illinois.  The parties have already demonstrated that they are capable of deposing witnesses in both California (Ms. Jones) and Illinois (Mr. Pellegrino), so I see no reason to favor one venue over the other for purposes of protecting witnesses from any inconvenience.

With regard to the interests of justice, JMI has not demonstrated that the Northern District of California is more familiar with the applicable law or will resolve this dispute more expeditiously than this Court.

I note also that Judge Real previously determined that venue was proper in this judicial district when he transferred JMI's declaratory judgment action.  I am loathe to reverse this determination and ping-pong this mirror image case back to California.  *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (noting that law of the case doctrine "appli[es] with even greater force to transfer decisions than to decisions of substantive law").

IV.

Defendant's motion to dismiss or transfer this case is DENIED for the reasons stated above.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 18, 2014